

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHERZELLE WOODS,

        Plaintiff,                    CIVIL ACTION NO. 07-15420

        v.                       DISTRICT JUDGE GEORGE CARAM STEEH

WASHTENAW HILLS MANOR,       MAGISTRATE JUDGE VIRGINIA MORGAN
INCORPORATED d/b/a
HEARTLAND HEALTHCARE
CENTER - ANN ARBOR,
HCR MANORCARE, HCR
HEALTHCARE, LLC, HEARTLAND
OF ANN ARBOR, MI, LLC, and
MANOR CARE INC.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

    This employment discrimination lawsuit arises out of plaintiff Sherzelle Woods'

termination as a certified nursing aid ("CNA"). The matter now comes before the court on

defendant Manor Care, Inc.'s Motion for Summary Judgment (D/E #102).[1] Plaintiff filed a

response in opposition to the motion (D/E #107) and Manor Care, Inc. filed a reply to that

response (D/E #110). This court held a hearing on the motion on April 15, 2009, at which it

---

    [1]HCR Healthcare, LLC, was also a party to the pending motion for summary judgment,
but it was subsequently dismissed without prejudice by stipulation and order on April 7, 2009
(D/E #112).

listened to oral argument and received evidence. For the reasons stated below, this Court

recommends that Manor Care, Inc.'s motion be **DENIED**.

## II. Background

On July 12, 2007, plaintiff filed a *pro per* complaint in state court against Washtenaw

Hills Manor, Inc., d/b/a Heartland Health Care Center - Ann Arbor ("Washtenaw Hills Manor")

and HCR Manorcare in which she alleged retaliation and discrimination claims. (Complaint;

attached as Exhibit A to D/E #1) Subsequently, plaintiff retained counsel and the parties

stipulated that plaintiff should be granted leave to file an amended complaint. (Stipulation and

Order to Amend Complaint, November 27, 2007; attached as Exhibit B to D/E #1) In plaintiff's

amended complaint, she alleged five counts against the same two defendants[2]: (1) racial

harassment and discrimination in violation of the Elliot-Larson Civil Rights Act, M.C.L. §

37.2101 *et seq.* ("ELCRA"); (2) retaliation in violation of the ELCRA; (3) racial harassment and

discrimination in violation of Title VII, 42 U.S.C. § 2000 *et seq.*; (4) retaliation in violation of

Title VII; and (5) violation of the Michigan Whistleblower Protection Act, M.C.L. § 15.361 *et*

*seq.* (First Amended Complaint; attached as Exhibit C to D/E #1)

Washtenaw Hills Manor and HCR Manorcare timely removed this case to federal court

on the basis of federal question jurisdiction (D/E #1). On December 27, 2007, Washtenaw Hills

Manor and HCR Manorcare filed their answer and affirmative defenses, and, in those affirmative

---

[2]With respect to the parties, the first amended complaint alleged that "Heartland
Healthcare Center is a nursing home facility that is owned and operated by HCR Manorcare"
(First Amended Complaint, ¶ 1) and that "Heartland Healthcare Center - Ann Arbor is an
assumed name of Washtenaw Hills Manor Inc. This facility is part of a chain of facilities that
HCR Manorcare owns and operates." (First Amended Complaint, ¶ 7)

defenses, they stated "[t]hat any or all named defendants are improper parties, improperly designated or otherwise improperly brought into this action." (D/E #2, p. 9)

On February 8, 2008, Washtenaw Hills Manor filed a Statement of Disclosure of Corporate Affiliations and Financial in which it indicated that it was not a subsidiary or affiliate of a publicly traded company (D/E #5).

On April 4, 2008, plaintiff filed a motion to compel discovery (D/E #15). In that motion, plaintiff asserted that defendants' counsel had indicated that there was a merger or sale of the facilities in question to another company and, in order to determine the proper party to this action and who would be liable if damages are awarded, plaintiff requested discovery relating to any merger or sale, but defendants refused to provide the necessary discovery (D/E #15, p. 5). On April 28, 2008, Washtenaw Hills Manor provided a response to that motion to compel discovery and, in that response, it stated:

> Plaintiff requested proof that the recent merger of Defendant in a private-equity buyout ensures that the new entity has assumed all liabilities. Defendant's response to this request states "All assets and liabilities of Washtenaw Hills Manor, Inc., have been assumed by Heartland of Ann Arbor MI, LLC," Thus, Plaintiff has a party admission and Defendant is unsure what more is necessary. [D/E #15, p. 8]

On April 29, 2008, plaintiff filed a reply to defendants' response to plaintiff's motion to compel discovery and, in that response, plaintiff argued that is was entitled to know who would be liable for damages and not merely rely on defendants' statement that another party is liable (D/E #17, p. 6)

On May 14, 2008, this court held a hearing on plaintiff's motion to compel discovery.  At

that hearing, the following exchange occurred:

| | |
|---|---|
| The Court: | Plaintiff has sought and not received the information regarding the transfer of liability to another entity.  All assets and liabilities have been assumed by Heartland.  What else do you want? |
| Mr. Fetter[3]: | Apparently there was some type of - - of sale of assets or some type of transfer from the named defendant to another entity.  Defendant's counsel came to me and informed me of this and told me to - - asked me if I would change the caption to the new entity. |
| | And I said sure, so long as I have information regarding who has liability.  And in the answer to the interrogatory they admitted that this new entity has all the liability.  And I don't think that's sufficient for me to find out who has liability. |
| The Court: | Why don't you make a motion to change the caption? |
| Mr. Miller[4]: | I don't even know that it's necessary actually, your Honor.  It is a complete sale that the named party is no longer gone.  All assets and liabilities have been assumed by the Carlisle Group when they - - or their subsidiaries when they took over HCR Manor Care private. |
| | It's - - they're - - I think counsel is being confused if there's a sale of one division of a company, the other company still exists.  But this is a complete take over.  There is no more Washtenaw Hills Manor Care, Inc.  It's now a totally different entity and its assumed all liabilities of the prior entity. |
| The Court: | Did you send a request to admit on this? |
| Mr. Fetter: | Just an interrogatory.  Because they admitted it in the interrogatory.  But's it's the current defendant that admits it, so I think it's a problem if it's one party admits it, admits that another party has liability. |

---

[3]Robert D. Fetter is counsel for plaintiff.

[4]Brett J. Miller is counsel for defendants.

Mr. Miller:    They're one in the same.  There is no longer another party, they've completely merged.

Mr. Fetter:    That other party is not the answering party.  I mean I - - I don't want to have any problems later on as to liability and then the new entity says no, we're not liable and the other entity is now out of the case.

The Court:    Then why don't you do a request to admit.  And if there's anything but an unqualified yes, we assume all liabilities and Heartland is willing to pay any and all judgments against Washtenaw Hills Manor, then we'll go from there.  Okay?

Mr. Fetter:    Yeah.

The Court:    So plaintiff will do a request, a request to admit.  [D/E #44, pp. 15-17]

On May 15, 2003, as part of the order granting in part plaintiff's motion to compel

discovery, this court ordered:

> 5. *Transfer of liability to Heartland of Ann Arbor*: Denied without prejudice.  Plaintiff may submit requests to admit regarding Heartland's commitment and ability to assume defense and/or liability for any recovery in this case.  If Heartland is indeed the correct defendant, defense counsel is directed to file a motion or stipulated order to that effect forthwith. [D/E #20, p. 2]

On May 29, 2008, Washtenaw Hills Manor filed a motion to change caption (D/E #23).

In that motion, Washtenaw Hills Manor requested that the caption in this case be changed to

reflect "Heartland of Ann Arbor MI, LLC, d/b/a Heartland Healthcare Center - Ann Arbor" as the

sole defendant in the case.  According to Washtenaw Hills Manor, such a change was appropriate

in light of this court' previous order and th fact that Heartland was the proper defendant in this

action.  According to Washtenaw Hills Manor, Heartland was the proper defendant given the

complete sale or merger of Washtenaw Hills Manor and the assumption of all liability by

-5-

Heartland.  Washtenaw Hills Manor also stated in its motion that "Plaintiff improperly named

HCR Manorcare as a party to this action but HCR Manorcare does not exist and is a trade name."

(D/E #23, p. 2)

On June 13, 2008, plaintiff filed a response to Washtenaw Hills Manor's motion to

change caption (D/E #32).  In that response, plaintiff stated that she was without sufficient

information to admit or deny most of the motion as the relevant information was within the

exclusive possession of defendants and they have refused to disclose the purchase agreement.

(D/E #32, p. 2, 6-7)  Plaintiff also stated that she had abided by the suggestion of the Magistrate

Judge and submitted a request to admit to defendants, but the request has not been answered to

date and there is nothing in the record that indicates that the successor entity assumed the liability

of the named defendants.  (D/E #32, p. 7)  According to plaintiff, the proper action is to add the

successor as a party without dismissing the named defendants or for the named defendants to

seek indemnification against the successor entity.  (D/E #32, p. 6)

Moreover, with respect to HCR Manorcare, plaintiff admitted that HCR Manorcare was

named as a party while denying that it was an improper party.  (D/E #32, p. 1)  Plaintiff also

stated:

> Further, there are two named Defendants in this case Washtenaw
> Hills Manor Inc., d/b/a Heartland Healthcare Center –Ann Arbor
> and HCR Manorcare. Based on information and belief, HCR
> Manorcare is the parent company of Washtenaw Hill Manor, Inc.,
> d/b/a Heartland Healthcare Center- Ann Arbor. Several witnesses
> have testified that "corporate" was involved in the employment
> decisions at issue in this case. Therefore, there is joint liability of
> the parent and subsidiary for the adverse employment action. The
> requested relief of this action dismisses HCR Manorcare without
> any replacement entity. Based on the representations of
> Defendants, this may be the Carlyle Group, but there is nothing on

-6-

the record as to who assumed the liabilities of HCR Manorcare."
[D/E #32, p. 7]

Following a hearing on the motion to change caption, this court ordered (1) Washtenaw

Hills Manor to "provide documents to Plaintiff sufficient to resolve the issue of which is the

proper entity or entities"; (2) "Counsel to meet and confer in an effort to stipulate to change of

caption to reflect the proper entity or entities."; and (3) "Until stipulation is otherwise ordered by

the court, all entities remain in the caption." (D/E #35, p. 1)

On August 6, 2008, plaintiff filed a motion for sanctions and contempt of court (D/E

#50). In that motion, plaintiff argued that defendants had refused to disclose any information and

has not provided one document to satisfy the court order to "provide documents to Plaintiff

sufficient to resolve the issue of which is the proper entity or entities (D/E #50, p. 1). Plaintiff

also argued that, defense counsel had informed plaintiff's counsel early in the litigation that there

had been some sort of corporate transaction that dissolved the named defendants and other

entities have assumed all of their liabilities, while consistently refusing to provide any discovery

regarding that merger. Plaintiff further argued that, while defense counsel indicated that

Defendant HCR Manorcare is a trade name, he has refused to provide the true name of the

corporate entity. (D/E #50, p. 2)

With respect to the parties, plaintiff asserted that, based on information and belief,

Washtenaw Hills Manor is a wholly owned subsidiary of HCR Manorcare and that, while

plaintiff had requested information regarding the relationship between HCR Manorcare and

Washtenaw Hills Manor, defendant merely answered that HCR Manorcare is not an entity,

merely a trade name, without identifying the entity behind the trade name. (Defendants' Answers

to Plaintiff's First Set of Interrogatories attached as Exhibit 1 , pg. 17-18)  Plaintiff also asserted

that she then requested information regarding the corporate transaction, including the name of the

new entity, but defendants merely responded that one or both of the defendants are no longer

publicly traded and "All assets and liabilities of Washtenaw Hills Manor, Inc. have been assumed

by Heartland of Ann Arbor MI, LLC."  (Defendants' Answers to Plaintiff's Second Set of

Interrogatories, attached as Exhibit 2, pg. 5)

On August 20, 2008, Washtenaw Hills Manor filed a response to plaintiff's motion for

sanctions and contempt of court (D/E #53).  In that response, Washtenaw Hills Manor argued it

had worked out the issue of successor liability with plaintiff and has agreed to add the successor

entity to the existing caption to insure that there is no prejudice to plaintiff.  (D/E #53, p. 2)

Washtenaw Hills Manor also argued that HCR Manorcare was not part of the motion to change

caption, Washtenaw Hills Manor was only seeking to swap the new Heartland LLC for the

nonexistent WHM, Inc., and the parties were only ordered to work out the issue of the LLC and

WHM, Inc.  (D/E #53, p. 12)

According to Washtenaw Hills Manor, it warned plaintiff repeatedly at the outset of

litigation that there is no such entity as HCR Manorcare and that plaintiff never sought any

discovery on the issue.  Washtenaw Hills Manor also asserted that plaintiff was now seeking to

obtain by a motion for sanctions information she should have requested during discovery and that

plaintiff should be estopped from seeking to add a new party at this stage of the lawsuit.  (D/E

#53, p. 11)  Washtenaw Hills Manor also asserted that:

> In December 2007, the Manor Care, Inc., the parent company of
> Washtenaw Hills Manor, Inc., was involved in a buyout by a group
> of funds owned by a private equity group. Washtenaw Hills Manor,

-8-

Inc. technically merged with Manor Care, Inc., its parent. Manor
Care, Inc. was then "taken private" and, simultaneously, a new
entity was formed, Heartland of Ann Arbor MI, ("Heartland
LLC"), which operates Heartland Healthcare Center-Ann
Arbor—the facility where Plaintiff worked. The new LLC assumed
all liabilities of the former WHM, Inc.. Heartland provided the
merger documents that were filed with the Michigan Department
of Labor and Economic Growth showing the merger and the
operation of the d/b/a Heartland Healthcare Center-Ann Arbor by
the new Heartland LLC. These documents note the new surviving
entity is Manor Care, Inc. and indicate that the two entities merged.
[D/E #53, pp. 11-12]

On August 27, 2008, plaintiff filed a reply to Washtenaw Hills Manor's response to

plaintiff's motion for sanctions and contempt of court (D/E #57). In that reply, plaintiff argued:

Defendant claims that this Order only relates to one of the parties
and not the other. The intent expressed at the hearing from the
Magistrate Judge and from the plain language is that the parties
were to determine who the proper parties are. The Order states
"which is the proper entity or entities." As such, Defendant must
provide sufficient information for Plaintiff to determine who the
proper parties to this suit after the merger. Defendants have not
provided one document. [D/E #57, p.2]

On September 8, 2008, the court held a hearing on plaintiff's motion for sanctions and

contempt of court. At that hearing the following exchange occurred:

The Court:    What's the next part?

Mr. Fetter:   This one's difficult, Your Honor, and I apologize. I wish we could
              have worked this out. But there was a - - you'll recall we were
              before this Court before on an issue regarding who the proper
              defendant is because there's been a merger.

The Court:    You substituted the caption, right?

Mr. Fetter:   You wanted to dismiss the named parties and bring in two other
              parties - - or one other party.

-9-

And you said, "Give plaintiff all the documents and information he needs to know to figure out who the proper entity or entities are."

And we haven't gotten one document. We asked for a document, we haven't gotten it. On the day of the hearing, I said, "If you don't want to give us anything, tell us who the parties are. I'll amend, bring them in, and then I can give them a request to admit, and have them admit that they're liable."

The Court:     Did you send the requests to them?

Mr. Miller:     That's not what he said. That was not the issue on the motion. We were here just on the LLC and the inc. He never submitted any discovery at all on the parent corporation.

Mr. Fetter:     That's not true, Your Honor.

Mr. Miller:     It's been in our affirmative defenses, it's been in our objections to every discovery request he's sent.

The Court:     Are you continuing to persist in your statement that they have the wrong defendant?

Mr. Miller:     No. The wrong parent company, correct. And he never submitted any - - we worked out the issue that was before us on that day. He's never submitted any discovery. We've submitted our corporate disclosures. The party is the LLC.

Mr. Fetter:     Your Honor, when I asked who is the  - - what the relationship between the subsidiary and the parent, and he says - - he doesn't give me any information.

And then you tell him, "Disclose the information. Let him figure out who the proper parties are."

The Court:     Did you send any requests to admit?

Mr. Fetter:     Yeah. And he said - - see, you have to understand, Your Honor. You can send requests to admit only to a party. And it would be the party escaping liability saying, "Yeah, this other guy is liable for my - -" so that's why I said allow me to bring these other two

-10-

parties in and then I'll send them a request to admit and then that'll be good.

And he wouldn't tell me the name of the parent company, because he said it's the wrong name.

Mr. Miller:    Because he never asked for discovery on the identity - - proper identity of the parent company.

Mr. Fetter:    I asked, what' the relationship between these parties.

The Court:     Well, you should have asked for who is the proper defendant.

Mr. Fetter:    Well, at that time, when I initially asked my interrogatories, I didn't know. I didn't know he wasn't the proper party. Every document says, "HCR Manorcare" on it. I thought HCR Manorcare was the right party. And he says it's just a trade name.

Mr. Miller:    It's in our affirmative defenses. It was in the answers to those interrogatories.

The Court:     Did it say who the proper party was?

Mr. Miller:    No. We said HCR Manorcare is a trade name. It is an improper party. But we did submit documents that basically gave it away.

The Court:     All right, who is the proper party?

Mr. Miller:    HCR Manorcare - - or, I'm sorry. Manorcare, Inc. was the parent company.

Mr. Fetter:    Is it still the parent company?

Mr. Miller:    My understanding is that it - - my understanding is there is no technical parent company now because it's an LLC. It doesn't have a parent company, which is what we put in our corporate disclosures.

But at the time, Manorcare, Inc. was the parent company and it still exists as an entity today.

The Court:     An entity subject to judgment, an entity with assets?

-11-

Mr. Miller:    Yes. It's just no longer publically traded.

The Court:    All right. I suggest you send an appropriate request to admit. I suggest you sit down and think about those and go for the money.

Mr. Fetter:    You're right, Your Honor.

The Court:    Because you haven't done those that. You have gone all around the barn and you haven't focused on who cares and what they're called. Are they going to be responsible and do they have assets and who is your insurer, because that should have been disclosed in a Rule 26(a)(1) disclosures.

Mr. Fetter:    Your Honor, in fairness, if you look at the rule for a request to admit, you can only serve them on a party. And these entities are not parties yet. That's why I was trying to get them into the lawsuit and then I could send out a request to admit.

The Court:    You could send it out to this defendant, that says, "Are you going to be responsible for any judgment against you?"

Mr. Fetter:    And then they said, "no."

The Court:    And if not, who is?

Mr. Fetter:    Fair enough, Your Honor. I understand. But the - - I hope you understand my issue with that, is that when they say, "I'll admit that somebody else is liable," that doesn't bind the other party. That just says that this party believes that somebody else is liable.

The Court:    I am sorry. You should have done this early on, - -

Mr. Fetter:    I did do it.

The Court:    - - particularly if it was in their affirmative defenses. And you should have taken discovery on this.

And the 26(a)(1) disclosures should have identified a responsible party and any responsible insurance carrier.

Mr. Miller:    They did. There's no insurance carrier. And we filed an appropriate disclosure and have the LLC, and says if it's not a

|  | publically-traded company, you don't need to disclose any parent company. |
|---|---|
| The Court: | Well, then you should have asked them who is going to be responsible for this judgment. |
| Mr. Fetter: | Your Honor - - |
| Mr. Miller: | An LLC has assets.  Our position is that they should be responsible for the judgment. |
| Mr. Fetter: | I asked for the information and it was part of a motion to compel that was denied without prejudice.  And then we came back here and you granted it and said, "You have to give him the information."  And then he still didn't give me the information. |
|  | So, I mean - - and then I sent out the request to admit as you had asked for before, and that's - - you know, they still didn't answer it very well. |
|  | So I don't want the Court to think that I haven't been diligent.  I've done all that I can. |
| The Court: | Defendant is going to identify the proper party to be sued by Friday, and a statement from counsel regarding who will be responsible for any judgments. |
|  | Plaintiff may amend within seven days to name the proper party. |
| Mr. Miller: | Your Honor, the reason we didn't want to name - - give away this name after discovery was because there's a relation back issue with the statute of limitations and a  - - |
| The Court: | Yes, there is.  And you know something?  Both of you have screwed around with this.  Because if it does relate back - - I mean, if you're not going to stand behind it, if somebody's not going to stand behind it, then the time to know is now.  And you should have asked this originally and that's why you're suppose to ask originally.  The first thing you should do in any lawsuit is identify the proper party. |
| Mr. Fetter: | I asked the question. |

| | |
|---|---|
| The Court: | No, you didn't. You didn't. You asked questions, but they were not the right questions. |
| Mr. Fetter: | Fair enough. |
| The Court: | Okay. Defendant has to pay counsel $500 as a sanction under 37 by September 30 '08. |
| | That's it. [D/E #83, pp. 55-62] |

On September 10, 2008, this court issued an order granting plaintiff's motion for

sanctions and contempt of court (D/E #64). According to that order:

> 8) Defendant shall identify the proper party to be served by September 12, 2008, and a statement from counsel regarding who will be responsible for any judgment. Plaintiff may amend within seven (7) days to name the proper party.
>
> 9) Defendant is to pay plaintiff's counsel $500.00 as a sanction under Rule 37 by September 30, 2008.

On September 22, 2008, plaintiff filed an amended complaint (D/E #71). That amended

complaint added two new parties: HCR Healthcare, LLC and ManorCare, LLC.

On September 25, 2008, defendants filed a motion to strike the amended complaint (D/E

#76). In that motion, defendants argued that plaintiff violated this court's order by untimely

naming two parties and by naming a non-existent entity. Defendants also objected to the addition

of two additional parties to the lawsuit where those entities did not employ plaintiff and the

amendment is barred by the statute of limitations for Whistleblower Protection Act claims.

On October 8, 2008, the parties stipulated to amend the case caption to reflect Manor

Care, Inc. as a party rather than Manor Care, LLC (D/E #79).

On October 17, 2008, plaintiff filed a response to defendants' motion to strike the

amended complaint (D/E #86). In that response, plaintiff argued that the amended complaint was

timely and that an extension of the summary judgment deadline was not justified given the fact

that defendants were on notice of plaintiff's claims, defendants had an opportunity to raise their

arguments before, and defendants's arguments were futile.

On October 27, 2008, defendants filed a reply to plaintiff's response to defendants'

motion to strike the amended complaint (D/E #90). In that reply, defendants argued that plaintiff

did not address defendants' argument that she violated this court's orders by adding two

defendants instead of one. Defendants also reiterated their argument that plaintiff's amended

complaint was untimely. In the alternative, defendants requested leave to file a motion for

summary judgment as to the two new parties.

On February 18, 2009, the Honorable George Caram Steeh issued an order denying

defendants' motion to strike the amended complaint (D/E #98). In that order, Judge Steeh first

determined that the amended complaint was timely filed. Judge Steeh also determined that

defendants' argument that the amendment was improper because it named two defendants rather

than one also lacked merit as defendants' correspondence identified the parent company of

Heartland as HCR Healthcare, LLC, and Manor Care, Inc., as the parent company of HCR

Healthcare, LLC. Judge Steeh further determined that defendants should have the opportunity to

file new summary judgment briefs on behalf of the newly named defendants to address the joint

employer and statute of limitations arguments. Judge Steeh also indicated that defendants'

anticipated motion for summary judgment would be referred to this court for a report and

recommendation because Judge Morgan would be in a better position to decide the questions

posed by the motion in light of the fact that she has already addressed numerous discovery

disputes in this case:

-15-

Federal Rule of Civil Procedure 15(c) governs the question of whether an amended complaint is allowed to "relate back" to the date that the original complaint was filed. Under Rule 15(c), "an amended complaint adding a new defendant 'relates back' to the original complaint if (A) the claim against the new defendant arose from the 'same conduct, transaction, or occurrence' set forth in the original complaint, (B) the new defendant shares an 'identity of interest' with the original defendant, (C) the new defendant has 'fair notice' of the claim, and (D) adding the new defendant does not prejudice the defendants." United States v. Pickus Constr. & Equip., No. 98 C 3261, 2000 WL 190574, *6 (N.D. Ill. Feb.9, 2000). "[R]elation back is improper where the plaintiff could have discovered the identity of the defendant through due diligence or knew of the defendant but failed to name him within the limitation period." King v. D.T. Nation, Nos. 89-6113, 89-6114, 1990 WL 170424, *1 (6th Cir. Nov.6, 1990) (citations omitted). Questions of fact remain as to whether adding the new defendants now would prejudice defendants, and whether or not plaintiff could have identified their identity sooner through due diligence.  These are questions that Magistrate Judge Morgan will be in a better position to decide than this Court, as she already has addressed numerous discovery disputes in this case, including plaintiff's discovery efforts to ascertain the proper corporate parent to name as defendant. [Woods v. Washtenaw Hills Manor Inc., No. 07-15420, 2009 WL 416434, *3 (E.D. Mich. 2009) (Steeh, J.)

On March 11, 2009, defendants HCR Healthcare, LLC and Manor Care, Inc. filed a motion for summary judgment (D/E #102).  In that motion, those defendants argue that no genuine issue of fact exists with respect to whether they are joint or integrated employers of plaintiff because plaintiff conducted no discovery and has no facts demonstrating the requisite interrelationships between them and plaintiff's employer.  Defendants also argued that their addition as new parties are barred by the applicable statute of limitations.[5]

---

[5]Defendants attached an affidavit from Mary Brownwell to the motion for summary judgment, but that affidavit was subsequently ordered stricken by this court on April 15, 2009.

On March 30, 2009, plaintiff filed a response to HCR Healthcare, LLC and Manor Care, Inc.'s motion for summary judgment (D/E #107).  In that response, plaintiff argues that Manor Care, Inc., is a joint and single employer of plaintiff given the centralized control of labor relations, common management, and interrelated operations between it and Washtenaw Hills Manor.  Plaintiff also argues that the second amended complaint relates back to the original filing date.  Plaintiff further argues that the defendants remain in contempt because they refuse to provide the information necessary to determine the proper party and refuse to name the proper party to be served.

On April 6, 2009, HCR Healthcare, LLC, and Manor Care, Inc., filed a reply to plaintiff's response to their motion for summary judgment (D/E #110).  In that reply, defendants argue that plaintiff was not diligent during discovery, cannot point to a single document to support her general denials, and her claims as to HCR Healthcare, LLC or Manor Care, Inc., do not relate back to the original complaint.  Defendants also argue that plaintiff cannot show a single or joint employer relationship as her entire response focuses on HCR Manorcare, a non-existent entity, instead of the disputed parties.

On April 7, 2009, the parties stipulated to the dismissal of HCR Healthcare, LLC (D/E #112).

On April 15, 2009, this court held oral argument on Manor Care, Inc.'s motion for summary judgment.

### III. Standard of Review

Manor Care, Inc. moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which provides that "[a] party against whom a claim, counterclaim, or cross-

claim is asserted or a declaratory judgment is sought may, at any time, move without or without

supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c).

        In deciding a motion for summary judgment, the court must view the evidence and draw

all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd.

et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F.

Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears

the initial burden of demonstrating the absence of a genuine issue of material fact. Once the

moving party has carried his burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106

S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his

pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist.

Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575,

1592 (1968)).

**IV. Discussion**

    **A. Employment Relationship**

Although a direct employment relationship usually provides the basis for liability in discrimination actions, courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an "employer." See, e.g., Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990, 993 (6th Cir. 1997); Armbruster v. Quinn, 711 F.2d 1332, 1336-1337 (6th Cir. 1983) abrogated on other grounds by Arbaugh v. Y&H Corp., 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Fall v. MNP Corp., No. 07-10480, 2008 WL 1882669, *5 (E.D. Mich. 2008) (Cox, J.). "In one approach, courts examine whether two entities are so interrelated that they may be considered a 'single employer' or an 'integrated enterprise.'" Swallows, 128 F.3d at 993. "In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those employees." Swallows, 128 F.3d at 993. A third method looks to whether the party allegedly committing the prohibited employment action was acting as "the agent of another company." Swallows, 128 F.3d at 993.

In this case, the parties agree that Washtenaw Hills Manor was plaintiff's direct employer, but dispute whether Manor Care, Inc., may also be held liable as plaintiff's employer. Both the second amended complaint and the briefs before the court refer to a "single employer" and "joint employers." Accordingly, the court will address plaintiff's allegations under both doctrines.

-19-

### 1. Single Employer or Integrated Enterprise

Plaintiff alleges and argues that Manor Care, Inc. is plaintiff's employer under the first approach - *i.e.*, that it functions as an integrated enterprise with Washtenaw Hills Manor and they are, therefore, a single employer for purposes of Title VII liability. See Swallows, 128 F.3d at 993; Armbruster, 711 F.2d at 1336. In analyzing single employer status, courts examine the following four factors: (1) interrelation of operations; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. Swallows, 128 F.3d at 993; Armbruster, 711 F.2d at 1336. None of the factors by themselves is dispositive, and it is not necessary that all four be satisfied. Swallows, 128 F.3d at 993; Armbruster, 711 F.2d at 1337-38. However, control over labor relations is a "central concern." Armbruster, 711 F.2d at 1337; E.E.O.C. v. Falls Village Retirement Community, Ltd., No. 05-1973, 2007 WL 756803, *7 (N.D. Ohio 2007) (O'Malley, J.).

### a. Interrelation of Operations

With respect to interrelation of operations, the Sixth Circuit in Swallows found that there was insufficient evidence of interrelation where the two companies kept their own records, maintained separate bank accounts and separate offices. Swallows, 128 F.3d at 994. In making that decision, the Swallows Court cited several cases discussing evidence of interrelation of operation:

> There is simply no evidence of the type of interrelation found in cases treating two entities as a single employer. *See, e.g.,* Armbruster, 711 F.2d at 1338 (finding interrelation of operations where parent company "handled" subsidiary's accounts receivable and its payroll and cash accounting, provided it with administrative backup, monitored its sales shipments, allowed subsidiary's

-20-

managerial employees to use its company credit cards, and housed
subsidiary's bank accounts at its headquarters); <u>McKenzie v.
Davenport-Harris Funeral Home</u>, 834 F.2d 930, 933-934 (11th Cir.
1987) (parent and subsidiary companies were marketed as "twins
in service," and parent kept subsidiary's books and records, issued
its payroll checks and paid its bills); <u>EEOC v. Dolphin Cruise Line,
Inc.</u>, 945 F.Supp. 1550, 1553-54 (S.D.Fla.1996) (two companies
provided exclusive services to each other, were marketed as twin
operations, used each other's logo and letterhead interchangeably,
issued checks on each other's behalf, and kept business and
personnel records at the same office). [<u>Swallows</u>, 128 F.3d at 994
(italics and parentheticals in original)]

Since <u>Swallows</u>, district courts within the Sixth Circuit have focused on similar types of

evidence. <u>See</u>, <em>e.g.</em>, <u>Fall v. MNP Corp.</u>, 2008 WL 1882669, *6 (E.D. Mich. 2008) (Here, there is

no evidence that Ovidon and MNP have common offices, equipment, or bank accounts. There is

evidence that they have common records with respect to accounts payable and that MNP receives

regular reports and regularly monitors sales and inventory); <u>E.E.O.C. v. Falls Village Retirement

Community, Ltd.</u>, 2007 WL 756803, *8 (N.D. Ohio,2007) (finding significant that two facilities

each had its own bank accounts, they did not share budgets, they were located in separate

buildings in different cities, and they were operated by different staffs); <u>Sheard v. Lockheed

Martin Energy Sys.</u>, 2006 WL 286982, at *3 (E.D.Tenn. Feb. 6, 2006) (finding that Lockheed

Martin and Lockheed Martin Energy Research Systems do not have an interrelation of operations

because the plaintiff did not show "evidence of shared budgets or integration of daily operations"

and because "each facility was located on a separate campus, operated by different staffs, and

provided distinct products and services.").

In this case, plaintiff provides four sources of evidence relating to the purported

interrelation of operations between Washtenaw Hills Manor and Manor Care, Inc.  First, plaintiff

provided excerpts from the deposition testimony of Linda Neumann.  (Deposition of Linda

Neumann, September 22, 2008; pp. 2-13, 26-29, 46-49, 62-65; attached as Exhibit 2 to Plaintiff's

Response to Manor Care, Inc.'s Motion for Summary Judgment)  From October of 2003 to

September of 2007, Linda Neumann was the Regional Director for the Midwest Region for an

employer she identified as HCR Manorcare.  (Neumann Deposition, pp. 6, 10)  Neumann also

identified herself as the person who made the decision to terminate plaintiff's employment at

Washtenaw Hills Manor.  (Neumann Deposition, pp. 63-64)  Moreover, while she was unable to

identify the corporate structure behind HCR Manorcare or any related entities (Neumann

Deposition, pp. 6-8), Neumann stated that, as the regional director, she provided leadership and

worked with the administrators of fifty-three (53) nursing facilities in the Midwest (Neumann

Deposition, pp. 9-11).  Among the areas Neumann worked in were financial operations, quality

of care, and customer service.  (Neumann Deposition, p. 11)

    Plaintiff also provided excerpts from the deposition testimony of Brenda Grove.

(Deposition of Brenda Grove, September 22, 2008; pp. 2-13; attached as attached as Exhibit 3 to

Plaintiff's Response to Manor Care, Inc.'s Motion for Summary Judgment)  Brenda Grove was

the area director of Human Resources for the Midwest Division of HCR Manorcare (Grove

Deposition, pp. 5-6) and she stated that as part of her job, she sets the "broader base tone" of

human resources, makes sure government regulations are followed, and makes sure "HR people"

follow company policy.  (Grove Deposition, p. 9)

    Plaintiff further provided the Employee Handbook for HCR Manorcare.  (HCR

ManorCare Employee Handbook; attached as attached as Exhibit 3 to Plaintiff's Response to

Manor Care, Inc.'s Motion for Summary Judgment)  Pursuant to that handbook, HCR Manorcare

operates under "the familiar trade names of Heartland, ManorCare and Arden Courts" and

employees nearly 60,000 employees in over 500 locations nationwide. (Employee Handbook, p.

5) Plaintiff also asserts notes that, throughout the handbook, the document references that she is

an HCR Manorcare employee. (See p. 51)

Furthermore, at oral argument, plaintiff submitted evidence and defendant's counsel

admitted that HCR Manorcare is a trade name used by Manor Care, Inc., among other entities.

(ManorCare 2006 Annual Report; attached as an Appendix to this Report and Recommendation)

Pursuant to that Annual Report, Manor Care, Inc., also refers to Manor Care and HCR Manor

Care. (Annual Report, p. 2)

While Manor Care, Inc., does not rebut the above evidence, the first factor in the single

employer test still weighs against finding that Washtenaw Hills Manor and Manor Care, Inc., are

an integrated enterprise. Plaintiff's evidence does suggest that Manor Care, Inc., as HCR

Manorcare, oversaw Washtenaw Hills Manor, but there is an absence of the types of evidence

courts look for with respect to this factor. Plaintiff has not provided any evidence suggesting that

the two entities provided exclusive services to each other, were marketed as twin operations,

used each other's logo and letterhead interchangeably, issued checks on each other's behalf, or

kept business and personnel records at the same office). See Swallows, 128 F.3d at 994.

Similarly, plaintiff provided no evidence that the two entities have common offices, equipment,

bank accounts, budgets, or staff. See Fall, 2008 WL 1882669 at *6 (E.D. Mich. 2008); Falls

Village Retirement Community, Ltd., 2007 WL 756803 at *8; Sheard, 2006 WL 286982 at *3.

### b. Common Management, Common Directors and Boards

With respect to the second factor, *i.e.*, common management, directors and boards, one

company's ability to influence the management of the other company is insufficient to

demonstrate common management for purposes of the integrated enterprise doctrine, Swallows,

128 F.3d at 994, and courts have looked for other evidence instead.  In Hunter v. Ark Rests.

Corp., 3 F.Supp.2d 18-19 (D.D.C.1998) , the district court found that there was no common

management between a parent corporation and its subsidiaries, even though two of the officers

and directors of the parent corporation also served as officers and directors of the two

subsidiaries and a regional manager oversaw operations, where the officers did not control the

daily operations of the subsidiaries other than to hire the managers.  Similarly,  the court in

Sheard found that the absence of evidence of control of daily operations precluded a showing of

common management between Lockheed Martin and Lockheed Martin Energy Research Systems

(LMER) even though the president of Lockheed Martin was an executive vice president of

LMER, they had a common vice president, and another individual sat on the boards of both

entities concurrently.  Sheard, 2006 WL 286982, at *3.  See also Falls Village Retirement

Community, Ltd., 2007 WL 756803 at *9 (finding that the plaintiff has failed to sufficiently

establish common management between three nursing homes, even though two common officers

oversaw the functioning of each nursing home, where the nursing homes were each run by

separate administrators who managed the daily operations of each facility.)

 In this case, plaintiff's evidence demonstrates that Neumann, who is the Regional

Director for the Midwest Region for HCR Manorcare (Neumann Deposition, pp. 6, 10), and

Grove, who is the area director of Human Resources for the Midwest Division of HCR

Manorcare (Grove Deposition, pp. 5-6), were involved in the daily operations of Washtenaw

Hills Manor.  With respect to employment discrimination matters, Neumann's role would be to

ensure that an investigation took place and that any necessary actions were taken (Neumann

Deposition p. 26), and, with respect to plaintiff's allegations of discrimination in this case,

Neumann was called in to investigate (Neumann Deposition, p. 29). With respect to discipline,

while Neumann is normally not involved at the center level, she was involved in plaintiff's

claims at Washtenaw Hills Manor because plaintiff had expressed previous concerns about

discrimination and they wanted to make sure the incident was thoroughly reviewed. (Neumann

Deposition, p. 49) Similarly, while Grove usually did not get involved in the disciplining or

terminating of employees, she would get involved if the HR manager contacted her and/or there

was something unusual about the situation. (Grove Deposition, p. 10) Grove also stated that, as

the area director of Human Resources for the Midwest Division of HCR Manorcare, she sets the

"broader base tone" of human resources, makes sure government regulations are followed, and

makes sure HR people follow company policy. (Grove Deposition, pp. 5-6, 9) Viewing that

unchallenged evidence in a light most favorable to plaintiff, as the court must, Matsushita, 475

U.S. at 587, this factor of the single employer test weighs in favor of finding that Washtenaw

Hills Manor and Manor Care, Inc., are an integrated enterprise.

### c. Centralized Control of Labor Relations and Personnel

With respect to this factor, the Sixth Circuit has explained that "the critical question is

'what entity made the final decisions regarding employment matters related to the person

claiming discrimination?'" Swallows, 128 F.3d at 995 (quoting Trevino v. Celanese Corp., 701

F.2d 397, 404 (5th Cir. 1983). See also Fall, 2008 WL 1882669 at *7 (finding that this factor

weighed against the plaintiff in part because the plaintiff did not identify any evidence that the

one entity had the ability to hire and fire employees at the other); Falls Village Retirement

Community, Ltd., 2007 WL 756803 at *9 (finding that this factor weighed against the plaintiff

where the administrators at the other facilities did not have any decision-making authority over the plaintiff's employment status or take part in the decision to terminate her).  However, in Swallows, the court also held that evidence that one entity has "a voice in certain employment decisions" was insufficient to establish that it controlled those decisions.  Swallows, 128 F.3d at 995.  Other possibly relevant evidence for this factor include whether the first entity did not promulgates employee policies for the other entity's employees and whether the first entity issues paychecks to the second entity's employees.  Fall, 2008 WL 1882669 at *7.

In this case, the evidence regarding centralized control of labor relations and personnel strongly suggests that Manor Care, Inc., made the final employment decision relating to plaintiff and that this factor weighs in favor of plaintiff.  At her deposition, Neumann testified both that she worked for HCR Manorcare, which is a trade name of Manor Care, Inc., and that she was involved in the teleconference at which the decision was made to terminate plaintiff's employment (Neumann Deposition, p. 63; Annual Report, p. 2).  According to Neumann, she was the person highest in the hierarchy of HCR Manorcare during that teleconference and she agreed with the decision to terminate plaintiff's employment.  (Neumann Deposition, p. 63) Neumann also stated at her deposition that, if she had disagreed with the decision to terminate plaintiff, she had the power to reverse it and plaintiff would not have been fired.  (Neumann Deposition, p. 64)  Neumann further stated that she reached her decision on the basis of information given to her by the people at the site.  (Neumann Deposition,  p. 64)  Moreover, as discussed above, Grove stated that she promulgated one company policy (Grove Deposition, pp. 9-10) and both her and Neumann's checks were issued from HCR Manorcare, despite their authority at Washtenaw Hills Manor (Neumann Deposition, p. 6; Grove Deposition, p. 6).

-26-

### d. Common Ownership and Financial Control

Plaintiff asserts that Manor Care, Inc., does not disagree that there is common ownership and plaintiff apparently believes that Manor Care, Inc., being a grandfather corporation of Washtenaw Hills Manor is enough to have the "common ownership and financial control" factor weigh in her favor. However, Manor Care, Inc., does dispute this factor and it argues that: "[t]he final factor is ownership. It is true that HCR Healthcare, LLC, is the parent company and Manor Care, Inc., is the grandparent but this alone, is insufficient to meet an integrated employment test. If it were, every parent corporation would be a *per se* integrated employer." (D/E #192, p. 16)

Beyond its broad assertion of common ownership and financial control, plaintiff does not address this factor. The Sixth Circuit has interpreted this factor as a question of whether either of the entities is a sham or otherwise illegitimate. Swallows, 128 F.3d at 995 ("If neither of the entities is a sham then the fourth test is not met" (citation omitted)); EEOC v. Wooster Bruch Co. Employees Relief Ass'n, 727 F.2d 566, 572 (6th Cir. 1984). Plaintiff has not argued or demonstrated that any of the defendants are sham corporations, nor does she offer any evidence of financial control. Therefore, this factor weighs against finding that they are an integrated enterprise.

### e. Weighing Factors

As discussed above, none of the above factors by themselves are dispositive, it is not necessary that all four factors be satisfied, and control over labor relations is a central concern. Swallows, 128 F.3d at 993; Armbruster, 711 F.2d at 1337-38. In this case, weighing the above factors demonstrates that a genuine issue exists as to whether Manor Care, Inc., was so interrelated with Washtenaw Hills Manor that they may be considered a single employer or an

integrated enterprise. Control over labor relations is a central concern and plaintiff's evidence

demonstrates that Manor Care, Inc. had control over employment decisions at Washtenaw Hills

Manor, such as the decision to terminate plaintiff's employment. Similarly, plaintiff's evidence

suggests that there was common management between the two entities. Plaintiff's evidence does

not demonstrate that all the relevant factors weigh in her favor, but, viewing that evidence and

drawing all reasonable inferences in favor of plaintiff, she has come forward with specific facts

showing that there is a genuine issue for trial and summary judgment is inappropriate on this

issue.

### B. Joint Employer

Plaintiff also argues that Manor Care, Inc., can be deemed a joint employer of plaintiff.

As described by the Sixth Circuit:

> The basis of the joint employer finding is simply that one employer
> while contracting in good faith with an otherwise independent
> company, has retained for itself sufficient control of the terms and
> conditions of employment of the employees who are employed by
> the other employer. Thus, the 'joint employer' concept recognizes
> that the business entities involved are in fact separate but that they
> *share* or co-determine those matters governing the essential terms
> and conditions of employment. [Swallows, 128 F.3d at 993 n. 4
> (citation omitted) (emphasis in original)]

Moreover, while the Sixth Circuit has not ruled on a case deciding whether parties are

common-law joint employers for purposes of Title VII liability, "the court has provided guidance

through National Labor Relations Board ("NLRB") cases." Fall, 2008 WL 1882669 at *7. For

example, in W.W. Grainger, Inc. v. NLRB, 860 F.2d 244, 247 (6th Cir. 1988), the Sixth Circuit

stated that the factual question of whether two employers are joint depends on factors such as

"the supervision of the employees' day-to-day activities, authority to hire or fire employees,

-28-

promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions."

Here, after examining the above factors, this court concludes that a genuine issue of fact exists with respect to whether Washtenaw Hills Manor and Manor Care, Inc., jointly employed plaintiff. As discussed above, Neumann had the ultimate authority to terminate plaintiff's employment while Groves ensured that company policy was followed at the different facilities. Moreover, while Neumann or Grove were not necessarily involved in every employment decision, they could be if needed.

### C. Statute of Limitations

Manor Care, Inc., also argues that plaintiff's claims under Title VII and the WPA are barred by the relevant statute of limitations because plaintiff failed to name it as a party within the limitation period despite the fact that plaintiff could have discovered its identity through due diligence. Plaintiff does not dispute that Manor Care, Inc., was added as a defendant after the relevant statute of limitations had expired and, instead, plaintiff argues that the claims against Manor Care, Inc., relate back to the original complaint pursuant to Fed. R. Civ. P. 15(c). Fed. R. Civ. P. 15(c) provides:

(c) Relation Back of Amendments.

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Sixth Circuit precedent holds that, in general "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." Marlowe v. Fisher Body, 489 F.2d 1057, 1064 (6th Cir. 1973). See also Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996) ("Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B)" (citing In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1449-50 (6th Cir. 1991))). However, the Sixth Circuit has also held:

> Typically, Rule 15(c) has been applied to situations where the plaintiff mistakenly named the wrong party, was unaware of the defendant's proper name, or was unaware of defendant's existence at the time the original complaint was filed. See Ringrose v. Engelberg Huller Co., 692 F.2d 403 (6th Cir. 1982); Wynne v. United States, 382 F.2d 699 (10th Cir. 1967). However, relation back is improper where plaintiff could have discovered the identity of the defendant through due diligence or knew of the defendant but failed to name him within the limitation period. Curry v. Johns-Manville Corp., 93 F.R.D. 623 (E.D. Pa. 1982) (plaintiff's failure to name known person as a party could reasonably be construed as a matter of tactical choice); Keller v. United States, 667 F.Supp. 1351 (S.D. Cal. 1987) (defendant's failure to be included in the lawsuit could have been viewed as an intentional decision not to sue rather than a "mistake"). See also Wood v. Worachek, 618 F.2d 1225, 1230 (7th Cir. 1980); United States use of Statham Instruments, Inc. v. Western Casualty & Surety Co., 359 F.2d 521, 523 (6th Cir. 1966); Potts v. Allis-Chalmers Corp.,

-30-

118 F.R.D. 597 (N.D. Ind. 1987). [King v. Nation, 917 F.2d 1304
(table), 1990 WL 170424, *2 (6th Cir. 1990).]

See also Smith v. Fritz Simmons Mfg. Co., No. 99-70954, 2000 WL 367880, *6 (E.D. Mich.

2000) (Borman, J.) ("Relation back is improper, however, where the Plaintiff could have

discovered the identity of the defendant through due diligence, or knew of the defendant, but

failed to name him within the limitation period.") (citing United States ex rel. Statham

Instruments, Inc. v. Western Cas. & Sur., Inc., 359 F.2d 521, 523 (6th Cir. 1966)).[6]

Here, relation back under Fed. R. Civ. P. 15(c) is proper because plaintiff's claims against

Manor Care, Inc., arise out of the same conduct, transaction or occurrence set out in the original

pleading and plaintiff, while exercising due diligence, was not able to discover the identity of

Manor Care, Inc., and name it as a defendant within the limitations period.

Questions regarding the proper party to sue has been an issue since early in this case.

Plaintiff's first amended complaint, filed after she retained counsel, alleged that "Heartland

Healthcare Center is a nursing home facility that is owned and operated by HCR Manorcare"

(First Amended Complaint, ¶ 1) and that "Heartland Healthcare Center - Ann Arbor is an

assumed name of Washtenaw Hills Manor Inc. This facility is part of a chain of facilities that

---

[6]This court would note that a district court within the Sixth Circuit has held that a
plaintiff need not exercise due diligence in order to avail himself of the relation back provisions
of Rule 15(c)(3). See Handy v. Gannett Satellite Information Network, Inc., No. 06-0331, 2007
WL 1975575 (M.D. Tenn. 2007) (Echols, J.). As found, by Judge Echols, Fed. R. Civ. P.
15(c)(3) only "requires three things for an amended complaint to relate back: (1) the claim
asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in
the original pleading; (2) within the time limit provided for service of summons and complaint
defendant has received such notice of the institution of the action that it will not be prejudiced;
and (3) within that same time period, the new defendant knew or should have known that, except
for a mistake concerning the identity of the proper party, the action would have been brought
against the party sought to be held responsible in the amended pleading." Handy, 2007 WL
1975575 at *1-2.

-31-

HCR Manorcare owns and operates." (First Amended Complaint, ¶ 7) while defendants' answer
and affirmative defenses stated "[t]hat any or all named defendants are improper parties,
improperly designated or otherwise improperly brought into this action." (D/E #2, p. 9)

Defendants' answer and affirmative defenses did not identify which of the named parties
was improper and Manor Care, Inc., now argues that plaintiff was not diligent in discovering that
information. However, while Manor Care, Inc., asserts that, after an initial request in which
plaintiff asked about the relationship between Washtenaw Hills Manor and HCR Manorcare,
plaintiff only submitted discovery requests regarding the sale of Washtenaw Hills Manor, this
court agrees with Judge Steeh statement that Manor Care, Inc.'s "argument is simply semantics."
(Order Denying Motion to Strike Second Amended Complaint, p. 4, D/E #98) Throughout this
case, plaintiff has been trying to find all potentially responsible parties and to ascertain the
corporate structure of plaintiff's employer, but that search has been delayed and complicated by
defendants' actions and tactics.

Plaintiff requested discovery regarding the relationship among the defendants and, once
defendants' counsel informed plaintiff's counsel about the sale, plaintiff also requested
information regarding the sale. Instead of responding to those discovery requests and resolving
the issues regarding the various entities, defendants attempted to resolve the issue with a "party
admission" that Heartland had assumed all assets and liabilities of Washtenaw Hills Manor.
However, as noted by plaintiff, Washtenaw Hills Manor's unsupported statement was insufficient
to either assign liability to Heartland or resolve the issues surrounding the proper entity to sue.
Plaintiff subsequently filed a motion to compel (D/E #15), but this court denied that motion

-32-

without prejudice and directed the parties to resolve the issue of the purported transfer of liability to Heartland (D/E #20, p. 2)

According to plaintiff, and not disputed by defendant, plaintiff submitted a request to admit to defendants on the purported transfer of liability to Heartland, but the request was never answered (D/E #32, p. 7). Instead, defendants filed a motion to change the case caption in which they asserted that Heartland should be the sole defendant in the case (D/E #23). However, defendants' motion failed to address the issue of Washtenaw Hills Manor's parent coporation and defendants failed to provide any support or evidence for its assertions regarding the purported transfer of liability. In light of those clear deficiencies, defendants' motion was improper and only served to delay discovering regarding the proper entities to sue. As discussed above, this court denied the motion to change caption and ordered (1) Washtenaw Hills Manor to "provide documents to Plaintiff sufficient to resolve the issue of which is the proper entity or entities"; (2) "Counsel to meet and confer in an effort to stipulate to change of caption to reflect the proper entity or entities."; and (3) "Until stipulation is otherwise ordered by the court, all entities remain in the caption." (D/E #35, p. 1)

Following that second order regarding discovery of the proper parties, Washtenaw Hills Manor asserted in its response to plaintiff's motion for sanctions and contempt of court that HCR Manorcare was not part of the motion to change caption, Washtenaw Hills Manor was only seeking to swap the new Heartland LLC for the nonexistent WHM, Inc., and that parties had only been ordered to work out the issue of the LLC and WHM, Inc. (D/E #53, p. 12) However, that is a complete mischaracterization of this court's order and the motion to change caption. Rather, defendants had, once again, attempted to improperly narrow this court's order by limiting it to

-33-

discovery regarding the sale of Washtenaw Hills Manor instead of providing discovery regarding

the potentially responsible parties and the corporate structure of plaintiff's employer. In light of

defendants' mischaracterization and improper actions, this court granted the motion for sanctions

and contempt of court while, once again, ordering Washtenaw Hills Manor to identify the proper

party (D/E #64).

In light of that procedural history, this court believes that the actions of defendants and

defense counsel are primarily responsible for the delay in bringing Manor Care, Inc., into this

case as a defendant. Plaintiff was duly diligent in discovering the identity of Manor Care, Inc.,

and, consequently, the claims against Manor Care, Inc., relate back to the original complaint

under Fed. R. Civ. P. 15(c) and Manor Care, Inc.'s statute of limitations argument should be

rejected.

**V. Conclusion**

For the reasons discussed above, the court recommends that defendant Manor Care, Inc.'s

motion be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

-34-

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

Dated: 6/11/09

**Manor Care, Inc.**
**Form 10-K**
**Table of Contents**

|  |  | Page Number |
|---|---|---|
| **PART I** | | |
| Item 1. | Business | 2 |
| Item 1A. | Risk Factors | 9 |
| Item 1B. | Unresolved Staff Comments | 16 |
| Item 2. | Properties | 16 |
| Item 3. | Legal Proceedings | 18 |
| Item 4. | Submission of Matters to a Vote of Security Holders | 18 |
| **PART II** | | |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 18 |
| Item 6. | Selected Financial Data | 20 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 21 |
| Item 7A. | Quantitative and Qualitative Disclosures about Market Risk | 40 |
| Item 8. | Financial Statements and Supplementary Data | 42 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 82 |
| Item 9A. | Controls and Procedures | 82 |
| Item 9B. | Other Information | 85 |
| **PART III** | | |
| Item 10. | Directors, Executive Officers and Corporate Governance | 86 |
| Item 11. | Executive Compensation | 86 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 87 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 87 |
| Item 14. | Principal Accounting Fees and Services | 88 |
| **PART IV** | | |
| Item 15. | Exhibits, Financial Statement Schedules | 88 |
| **Signatures** | | 96 |
| **Exhibits** | | 98 |

1

**PART I**

## Item 1.  Business

**General Development of Business**

Manor Care, Inc., which we also refer to as Manor Care and HCR Manor Care, provides a range of health care services, including skilled nursing care, assisted living, post-acute medical and rehabilitation care, hospice care, home health care and rehabilitation therapy.  The most significant portion of our business relates to long-term care, including skilled nursing care and assisted living.  Our other segment is hospice and home health care.  We provide greater detail about the revenues of certain health care services and other segment information in Notes 4 and 16 to the consolidated financial statements.

***Corporate Headquarters***
Manor Care, Inc.
333 N. Summit Street
Toledo, Ohio  43604-2617

Mailing address:
P.O. Box 10086
Toledo, Ohio  43699-0086

Phone:  (419) 252-5500
Internet Website:  www.hcr-manorcare.com
E-mail:  info@hcr-manorcare.com

***Securities and Exchange Commission***
Our filings with the Securities and Exchange Commission, or SEC, are available free of charge through our website with a hyperlink to the SEC's website as soon as reasonably practicable after such material is electronically filed with or furnished to the SEC.

***Certifications***
The certifications of the Chief Executive Officer and Chief Financial Officer of Manor Care, Inc. required by Section 302 of the Sarbanes-Oxley Act of 2002 have been filed as Exhibits 31.1 and 31.2, respectively, to this Form 10-K for the year ended December 31, 2006.

The certification of the Chief Executive Officer required by the New York Stock Exchange Listed Company Manual, Section 303A.12(a), relating to Manor Care, Inc.'s compliance with the New York Stock Exchange corporate governance listing standards, was submitted to the New York Stock Exchange on June 7, 2006, without qualification.

2

**The cost of general and professional liability claims may increase.**

Patient care liability remains a serious industry-wide cost issue.  The health care industry has continued to benefit from the positive effect of the passage of tort reform measures in certain key states.  Despite those reforms, if patient care claims significantly increase in number and size, our future financial condition and operating results may be adversely affected.

## Item 1B.  Unresolved Staff Comments

None

## Item 2.  Properties

Our principal properties and those of our subsidiaries, which are of material importance to the conduct of our and their business, consist of 343 long-term care centers located in 30 states.  The centers are predominately single-story structures with brick or stucco facades, dry wall partitions and attractive interior finishes.  Common areas of the skilled nursing facilities include dining, therapy, personal care and activity rooms, and patient and visitor lounges, as well as administrative offices and employee lounges.  We believe that all of our centers have been well maintained and are suitable for the conduct of our business.

The following table shows the number and location of centers and beds we operated as of December 31, 2006 for our long-term care segment.

| | Number of Centers | | |
| | Skilled | Assisted Living | Number of Beds |
|---|---|---|---|
| Pennsylvania | 46 | 9 | 8,031 |
| Ohio | 43 | 9 | 6,251 |
| Florida | 28 | 11 | 4,610 |
| Illinois | 29 | 8 | 4,577 |
| Michigan | 28 | 3 | 3,787 |
| Maryland | 14 | 9 | 2,742 |
| Texas | 12 | 4 | 2,100 |
| California | 9 | | 1,289 |
| Virginia | 6 | 2 | 1,038 |
| West Virginia | 7 | | 927 |
| Wisconsin | 8 | | 868 |
| Indiana | 4 | 1 | 859 |
| South Carolina | 7 | | 853 |
| New Jersey | 4 | 4 | 747 |
| Iowa | 5 | | 526 |
| Kansas | 3 | | 487 |
| Washington | 4 | | 482 |
| Oklahoma | 4 | | 478 |
| Missouri | 3 | | 430 |
| Delaware | 2 | 1 | 361 |
| Colorado | 2 | | 310 |
| Georgia | 2 | | 257 |
| Kentucky | 1 | 1 | 242 |
| North Dakota | 2 | | 215 |
| Nevada | 1 | | 189 |
| Connecticut | | 3 | 180 |
| Utah | 1 | | 140 |
| North Carolina | 1 | | 120 |
| Arizona | 1 | | 118 |
| South Dakota | 1 | | 99 |
| Total | 278 | 65 | 43,313 |

We own 335 of these centers, lease seven, and have a partnership in one center. These include 65 assisted living facilities that we operate with a total of 5,080 beds. Four of our properties are subject to liens that encumber the properties in an aggregate amount of $2.6 million.

We lease space for our corporate headquarters in Toledo, Ohio under a synthetic lease. We discuss our obligation for this lease in the "Off-Balance Sheet Arrangement" section on pages 37-38 under Item 7, Management's Discussion and Analysis. We also lease space for our hospice and home health offices; hospice inpatient units, except for one that we own; and outpatient therapy clinics.

17

**Exhibit 23**

### Consent of Independent Registered Public Accounting Firm

We consent to the incorporation by reference in the Registration Statement (Form S-8, No. 333-64181) pertaining to the Health Care and Retirement Corporation Stock Option Plan for Outside Directors and the Stock Option Plan for Key Employees of Health Care and Retirement Corporation, the Registration Statement (Form S-8, No. 333-93575) pertaining to the Manor Care, Inc. Nonqualified Retirement Savings and Investment Plan of Manor Care, Inc., the Registration Statement (Form S-8, No. 333-102248) pertaining to the HCR Manor Care Stock Purchase and Retirement Savings 401(k) Plan of Manor Care, Inc., the Registration Statement (Form S-8, No. 333-117647) pertaining to the Amendment and Restatement of The Equity Incentive Plan of Manor Care, Inc., Amendment No. 1 to the Registration Statement (Form S-3, No. 333-129107) pertaining to $400,000,000 of 2.125% Convertible Senior Notes due 2035 of Manor Care, Inc. and Registration Statement (Form S-3, No. 333-136651) pertaining to $250,000,000 of 2% Convertible Senior Notes due 2036 of Manor Care, Inc. of our reports dated January 30, 2007, with respect to the consolidated financial statements and schedule of Manor Care, Inc., Manor Care, Inc. management's assessment of the effectiveness of internal control over financial reporting, and the effectiveness of internal control over financial reporting of Manor Care, Inc., included in the Form 10-K for the year ended December 31, 2006.

/s/ Ernst & Young LLP

Toledo, Ohio
February 19, 2007

**Exhibit 31.1**

**CEO Certification**

I, Paul A. Ormond, certify that:

(1) I have reviewed this annual report on Form 10-K of Manor Care, Inc.;

(2) Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

(3) Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

(4) The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a.  Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b.  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c.  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d.  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

(5) The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a.  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b.  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date:  February 21, 2007

/s/ Paul A. Ormond
Chairman, President and Chief Executive Officer

**Exhibit 31.2**

### CFO Certification

I, Steven M. Cavanaugh, certify that:

(1) I have reviewed this annual report on Form 10-K of Manor Care, Inc.;

(2) Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

(3) Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

(4) The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a. Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

(5) The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: February 21, 2007

/s/ Steven M. Cavanaugh
Vice President and Chief Financial Officer

**Exhibit 32.1**

Certification pursuant to 18 U.S.C. Section 1350,
as adopted pursuant to
Section 906 of the Sarbanes-Oxley Act of 2002

I, Paul A. Ormond, Chairman, President and Chief Executive Officer of Manor Care, Inc. (the Company), certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to the best of my knowledge:

(1) The Annual Report of the Company on Form 10-K for the period ended December 31, 2006 as filed with the Securities and Exchange Commission on the date hereof (the Report) fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company as of, and for, the periods presented in the Report.

/s/ Paul A. Ormond

Paul A. Ormond
Chairman, President and Chief Executive Officer
February 21, 2007

**Exhibit 32.2**

Certification pursuant to 18 U.S.C. Section 1350,
as adopted pursuant to
Section 906 of the Sarbanes-Oxley Act of 2002

I, Steven M. Cavanaugh, Vice President and Chief Financial Officer of Manor Care, Inc. (the Company), certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to the best of my knowledge:

(1) The Annual Report of the Company on Form 10-K for the period ended December 31, 2006 as filed with the Securities and Exchange Commission on the date hereof (the Report) fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company as of, and for, the periods presented in the Report.

/s/ Steven M. Cavanaugh

Steven M. Cavanaugh
Vice President and Chief Financial Officer
February 21, 2007

103

## Performance Graph

The graph below compares the total return on an investment in Manor Care common stock to the cumulative total return for a broad market index (the Standard & Poor's 500 Stock Index) and to the cumulative total return for an industry index (the S&P 500 Health Care Facilities Index)[1] [2]. The indices reflect the year-end market value of an investment in the stock of each company in the index, including additional shares assumed to have been acquired with cash dividends, if any.

The graph assumes a $100 investment on December 31, 2001 in the stock of Manor Care, Inc. at a price of $23.71 per share. The graph also assumes investments on the same date of $100 each in the S&P 500 and the S&P 500 Health Care Facilities Index.

### Comparison of Cumulative Five-Year Total Return



|  | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|---|
| Manor Care, Inc. | $100.00 | $78.49 | $146.98 | $153.22 | $174.74 | $209.00 |
| S&P 500 | $100.00 | $77.90 | $100.25 | $111.15 | $116.61 | $135.03 |
| S&P 500 Health Care Facilities | $100.00 | $72.20 | $76.08 | $68.40 | $76.24 | $77.90 |

(1) The old peer group index comprised the following companies: Beverly Enterprises, Inc., Integrated Health Services, Inc., Vencor, Inc., Genesis Health Ventures, Inc. and Alterra Healthcare Corporation. During 2001, Genesis Health Ventures (emerged as NeighborCare, Inc. and now known as Omnicare, Inc.) and Vencor (now known as Kindred Healthcare, Inc.) emerged from chapter 11 bankruptcy protection. Beverly Enterprises, Inc. is no longer a publicly traded company. At December 31, 2006, Integrated and Alterra remained in bankruptcy proceedings. Due to these events, it is not possible to display a comparison of five-year cumulative total return for the company's old peer group index.

(2) The S&P 500 Health Care Facilities Index included in the performance graph above comprises companies selected by Standard and Poor's for inclusion in the Health Care Facilities sub-industry.